UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 25-____ |
| | : | |
| v. | : | |
| | : | |
| **JAMIL MOHAMMED** | : | Violation: |
| | : | 18 U.S.C. § 1343 |
| Defendant. | : | (Wire Fraud) |
| | : | |

## INFORMATION

The United States charges:

### COUNT ONE

At all times relevant to this Information, except as otherwise indicated:

1. Beginning in or around March 2020, the defendant, **JAMIL MOHAMMED** ("**MOHAMMED**"), worked as an IT Specialist for Information Security at the U.S. Agency for International Development, Office of the Inspector General. On or around November 29, 2020, **MOHAMMED** registered the formation of Babs Solutions LLC ("Babs Solutions") with the Commonwealth of Virginia State Corporation Commission.

*Paycheck Protection Program*

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or around March 27, 2020, to provide emergency financial assistance to Americans suffering economic harms from the COVID-19 pandemic. To achieve this goal, the CARES Act established new temporary programs and expanded existing programs administered by the U.S. Small Business Administration ("SBA"), which is an agency within the United States federal government and has its headquarters located in Washington, D.C.

3. One form of assistance provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a

program referred to as the Paycheck Protection Program ("PPP"). The money to fund PPP loans came from the U.S. Treasury.

4. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business to an eligible private lender, such as a federally insured bank or a SBA-approved non-bank lender. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that the PPP loan funds would "be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities," among other "expenditures as specific under the Paycheck Protection Program Rules." The applicant also was required to acknowledge that "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." The applicant was further required to state, among other things, the business's average monthly payroll expenses, and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5. After a PPP loan application was submitted, it was reviewed and processed, in the first instance, by the participating lender approved by the SBA. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. The SBA guaranteed the loans funded by the lender for the PPP loan. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if, among other things, the business spent the loan proceeds on eligible expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### *The Scheme to Defraud*

6. From at least in or around March 2021, and continuing through at least in or around September 2021, **MOHAMMED** knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property, in connection with applications for PPP loans, by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### *Purpose of the Scheme*

7. It was the purpose of the scheme to defraud that **MOHAMMED** would attempt to file, file, and cause the filing of materially false applications and requests for PPP loans in order to obtain money that he was not entitled to receive and to spend that fraudulently obtained money, totaling approximately $20,646, for his own benefit and enjoyment.

### *Manner and Means*

8. It was part of the scheme that:

9. On or around April 2, 2021, and again on or around April 12, 2021, **MOHAMMED** submitted fraudulent PPP loan applications to a non-bank small business lender (Lender #1), which was located in Lake Mary, Florida, to obtain approximately $20,646, by means of false and fraudulent pretenses, representations, and promises.

10. In both PPP applications that **MOHAMMED** submitted to Lender #1, he inflated the gross yearly income of Babs Solutions in order to obtain more money from the PPP loan from Lender #1 or SBA. Specifically, **MOHAMMED** submitted loan applications that falsely stated

Babs Solutions had a gross income in 2020 of $49,552 when, in fact, its gross income in 2020 was only $4,560. This statement regarding Babs Solution's gross income in each loan application was materially false, **MOHAMMED** knew each statement was materially false, and **MOHAMMED** submitted these materially false statements to Lender #1 with the intent to defraud in order to receive each PPP loan.

11. In each of his PPP loan applications, **MOHAMMED** also falsely stated that his company, Babs Solutions, was established on January 1, 2020. Only entities that were in operation on February 15, 2020, could qualify for a PPP loan. Records from the Commonwealth of Virginia State Corporation Commission reflect that **MOHAMMED** registered the formation of Babs Solutions on or around November 29, 2020 and therefore would not have qualified for a PPP loan.

12. As a result of **MOHAMMED**'s materially false statements, Lender #1 funded both of **MOHAMMED**'s PPP loans. In connection with **MOHAMMED**'s first PPP loan, on or around April 19, 2021, Lender #1 deposited via interstate wire transmission $10,323 into a business checking account (ending x7322) that was controlled by **MOHAMMED**. On April 20, 2021, **MOHAMMED** transferred $5,000 from the business checking account to Prime Trust LLC, a cryptocurrency custodian, in order to invest in cryptocurrency through the Binance cryptocurrency exchange.

13. Also as a result of **MOHAMMED**'s materially false statements, in connection with **MOHAMMED**'s second PPP loan, on or around May 5, 2021, Lender #1 deposited via interstate wire transmission $10,323 into a business checking account (ending x7322) that was controlled by **MOHAMMED**. On May 6, 2021, **MOHAMMED** transferred $5,000 from the business checking account to Prime Trust LLC, a cryptocurrency custodian, in order to invest in cryptocurrency through the Binance cryptocurrency exchange.

14. As part of his scheme to defraud, **MOHAMMED** received, in total, approximately $20,646 from Lender #1 for the two PPP loans and used at least $10,000 of the funds to invest in cryptocurrency. For the remainder of the funds from the PPP loans, **MOHAMMED** did not use the funds for eligible expenses as specified under the PPP loan program.

15. On or around August 31, 2021, **MOHAMMED** submitted a "PPP Loan Forgiveness Application" for his two PPP loans. As part of the loan forgiveness application, **MOHAMMED** falsely affirmed that he had complied with all requirements of the PPP loan program, including the eligible uses of PPP loan proceeds. In fact, **MOHAMMED** had not complied with the requirements of the PPP loan program and had misspent the PPP funds that he received as part of his fraudulent PPP loan applications.

16. On or about the date set forth below, **MOHAMMED**, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds, by means of the following wire communications in interstate commerce:

| Approximate Date | Description |
|---|---|
| April 12, 2021 at 10:47 a.m. | Submitted fraudulent PPP application from an IP address located in Virginia to Lender #1 located in Florida |

**(Wire Fraud in violation of Title 18, United States Code, Section 1343)**

/
/
/
/
/
/
/
/
/
/

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: _____
Matthew F. Sullivan (NY Bar No. 4785952)
Sara A. Hallmark (MD Bar No. 1112130399)
Trial Attorneys
1400 New York Avenue NW
Washington, DC 20530
(202) 578-6583 (Sullivan)
(202) 514-2686 (Hallmark)
matthew.sullivan2@usdoj.gov
sara.hallmark2@usdoj.gov