UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**JAMIL MOHAMMED**<br><br>**Defendant.** | CRIMINAL NO. 25cr120 |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States, by and through its undersigned attorneys, and the defendant, **JAMIL MOHAMMED** ("**MOHAMMED**"), with the concurrence of his attorney, Todd Spodek, Esq., stipulate and agree that the following facts fairly and accurately describe **MOHAMMED**'s conduct in the offense to which he is pleading guilty. These facts do not constitute all of the facts known to the parties concerning the charged offense and related conduct. This statement is being submitted to demonstrate that sufficient facts exist to establish that **MOHAMMED** committed the offense to which he is pleading guilty. **MOHAMMED** knowingly, voluntarily, and truthfully admits to the facts set forth below.

### I. Maximum Penalties

As to Count One, a violation of 18 U.S.C. § 1343 carries a maximum sentence of 20 years of imprisonment; a fine not to exceed $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(d); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(3); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

### II. Elements of the Offense

As to Count One, the elements of the charged offense, a violation of 18 U.S.C. § 1343, are:

1) The defendant knowingly and with intent to defraud, participated in, devised, or

-1-

*Jm*
*05/12/25*

intended to devise a scheme and artifice to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2) the false or fraudulent pretenses, representations, or promises made as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3) the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

4) the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

### III. Brief Statement of Facts

1. At all times relevant to this Statement of the Offense, the defendant, **MOHAMMED**, was a resident of Woodbridge, Virginia, and beginning in or around March 2020, **MOHAMMED** worked as an IT Specialist for Information Security at the U.S. Agency for International Development, Office of the Inspector General.

2. **MOHAMMED** was the sole owner and controlled the entity, Babs Solutions LLC ("Babs Solutions"). **MOHAMMED** registered the formation of Babs Solutions with the Commonwealth of Virginia State Corporation Commission on November 29, 2020.

### *Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or around March 27, 2020, to provide emergency financial assistance to Americans suffering economic harms from the COVID-19 pandemic. To achieve this goal, the CARES Act established new temporary programs and expanded existing programs administered by the U.S. Small Business Administration ("SBA"), which is an agency within the United States federal government and has its headquarters located in Washington, D.C.

4. One form of assistance provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a



program referred to as the Paycheck Protection Program ("PPP"). The money to fund PPP loans came from the U.S. Treasury.

5.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business to an eligible private lender, such as a federally insured bank or an SBA-approved non-bank lender. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that the PPP loan funds would "be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities," among other "expenditures as specific under the Paycheck Protection Program Rules." The applicant also was required to acknowledge that "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." The applicant was further required to state, among other things, the business's average monthly payroll expenses, and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

6.      After a PPP loan application was submitted, it was reviewed and processed, in the first instance, by the participating lender approved by the SBA. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. The SBA guaranteed the loans funded by the lender for the PPP loan. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if, among other things, the business spent the loan proceeds on eligible expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

*The Scheme to Defraud*

7. **MOHAMMED** admits and agrees that from at least in or around March 2021, and continuing through at least in or around September 2021, **MOHAMMED** did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

8. Specifically, on or around April 2, 2021, and again on or around April 12, 2021, **MOHAMMED** submitted an application electronically, via interstate wire communications, for a PPP loan to a non-bank small business lender (Lender #1), which was located in Lake Mary, Florida, and **MOHAMMED** received funds for those two PPP loans from Lender #1.

9. In both PPP applications that **MOHAMMED** submitted to Lender #1, he inflated the gross yearly income of Babs Solutions in order to obtain more money from the PPP loan from Lender #1 or SBA. Specifically, **MOHAMMED** submitted loan applications that falsely stated Babs Solutions had a gross income in 2020 of $49,552 when, in fact, its gross income in 2020 was only $4,560. This statement regarding Babs Solution's gross income in each loan application was materially false, **MOHAMMED** knew each statement was materially false, and **MOHAMMED** submitted these materially false statements to Lender #1 with the intent to defraud in order to receive each PPP loan.

10. In each of his PPP loan applications, **MOHAMMED** also falsely stated that his

company, Babs Solutions, was established on January 1, 2020. Only entities that were in operation on February 15, 2020, could qualify for a PPP loan. Records from the Commonwealth of Virginia State Corporation Commission reflect that **MOHAMMED** registered the formation of Babs Solutions on or around November 29, 2020, and therefore would not have qualified for a PPP loan.

11. As a result of **MOHAMMED**'s materially false statements, Lender #1 approved both of **MOHAMMED**'s PPP applications and funded the loans. In connection with **MOHAMMED**'s first PPP loan, on or around April 19, 2021, Lender #1 deposited via interstate wire transmission $10,323 into a business checking account (ending x7322) that was controlled by **MOHAMMED**. On April 20, 2021, **MOHAMMED** transferred $5,000 from his business checking account to Prime Trust, a cryptocurrency custodian, in order to invest in cryptocurrency through the Binance crypto exchange.

12. Also as a result of **MOHAMMED**'s materially false statements, in connection with **MOHAMMED**'s second PPP loan, on or around May 5, 2021, Lender #1 deposited via interstate wire transmission $10,323 into a business checking account (ending x7322) that was controlled by **MOHAMMED**. On May 6, 2021, **MOHAMMED** transferred $5,000 from his business checking account to Prime Trust LLC, a cryptocurrency custodian, in order to invest in cryptocurrency through the Binance crypto exchange.

13. **MOHAMMED** received, in total, $20,646 from Lender #1 for the two PPP loans and used at least $10,000 of the funds to invest in cryptocurrency. For the remainder of the funds from the PPP loans, **MOHAMMED** did not use the funds for eligible expenses as specified under the PPP loan program.

14. On or around August 31, 2021, **MOHAMMED** submitted a "PPP Loan

05/12/25 JM

Forgiveness Application" for his two PPP loans. As part of the loan forgiveness application, **MOHAMMED** falsely affirmed that he had complied with all requirements of the PPP loan program, including the eligible uses of PPP loan proceeds. In fact, **MOHAMMED** had not complied with the requirements of the PPP loan program and had misspent the PPP funds that he received as part of his fraudulent PPP loan applications.

15. **MOHAMMED**'s actions, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason, and were committed in furtherance of a common and continuing fraudulent scheme.

    Respectfully submitted,

    LORINDA I. LARYEA
    Acting Chief, Fraud Section
    Criminal Division
    U.S. Department of Justice

By: _/s/ Matthew F. Sullivan_
    Matthew F. Sullivan
    Sara A. Hallmark
    Trial Attorneys


05/12/25

## DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Offense, and I have discussed it fully with my attorney, Todd Spodek. I fully understand this proffer and I acknowledge its truthfulness, agree to it, and accept it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 4/24/2025

Jamil Mohammed
ID 93AgKTpfovXBxENdo5x8e3Rp

Jamil Mohammed
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page constituting the government's statement of the offense related to my client's guilty plea. I have reviewed the entire proffer with my client, Jamil Mohammed, and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 4/24/2025

ID MjqAR3dyLTJSxAH9djUVY2xV

Todd Spodek
Attorney for Defendant

JM
05/12/25